## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRED CARTER,                    :
                                :        **Civil No. 4:10-CV-01266**
    **Plaintiff,**                :
                                :        **(Judge Conner)**
    **v.**                       :
                                :        **(Magistrate Judge Carlson)**
RAYMOND LAWLER, et. al.,         :
                                :
    **Defendants.**              :

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND STATEMENT OF THE CASE

In this prisoner civil rights suit, *pro se* Plaintiff Fred Carter, a prisoner committed to the custody of the Pennsylvania Department of Corrections ("DOC") at SCI Huntingdon, asks us to examine the results of a prison disciplinary hearing and its subsequent appeals. The allegations in the amended complaint stem from a misconduct Plaintiff received resulting from a violent altercation with another inmate on June 14, 2009. (Doc. 18.)[1] Plaintiff alleges that, on that day, another prisoner,

---

[1] We observe that after Defendants filed their motion to dismiss Plaintiff's amended complaint, Plaintiff filed another document that purported to be a proposed second amended complaint. (Doc. 29.) Review of this document reveals it to be identical to Plaintiff's original amended complaint. (Compare Docs. 18 and 29.) We recognize that in the ordinary course, a properly filed amended complaint will render moot a pending motion to dismiss. See, e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002); see also Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) (recognizing that an "amended complaint supersedes the original version."). This result should not

Inmate Nguyen, entered Plaintiff's cell and initiated a fight with Plaintiff.  Defendant

Eberling, a Correctional Officer ("C/O") at SCI Huntingdon, responded to the

incident and, upon entering Plaintiff's cell, noticed blood throughout.  Plaintiff was

questioned about the blood but denied being part of a fight with Nguyen.   Plaintiff

concedes, however,  that Nguyen suffered severe injuries as a result of the altercation

with Plaintiff.  (Doc. 18.).   Defendant Eberling cited Plaintiff for misconduct and

charged him with assault and lying to an employee.  Plaintiff pled not guilty to the

charges.

On June 16, 2009, Defendant Mitchell presided over Plaintiff's prison

disciplinary hearing.   Based upon video evidence and C/O Eberling's Report,

Defendant Mitchell found Plaintiff guilty of both charges.[2]  Plaintiff appealed

---

flow in this case.  First, the second proposed amended complaint is identical to the
amended complaint previously filed, and thus it would be absurd to permit the
same document filed a second time to render moot a properly filed motion to
dismiss.  Secondly, the second proposed amended complaint  was not properly
filed in accordance with Rule 15 of the Federal Rules of Civil Procedure, both
because it was not filed within 21 days of Defendants' motion to dismiss, and also
because, it being the second amended complaint, Plaintiff was obligated to obtain
leave of Court in order to file it.  Fed. R. Civ. P. 15(a)(1) and (2).  We will thus
recommend that the Court strike Plaintiff's proposed second amended complaint,
which appears to have been, in any event, merely a refiling of Plaintiff's amended
complaint. (Doc. 18).

[2] Plaintiff submitted copies of prison disciplinary decisions and appeals in
this case, as exhibits upon which he relies in support of his brief in opposition to
Defendants' motion.  (Doc. 27, Exhibits.)

Mitchell's decision to the Program Review Committee ("PRC"), comprised of Defendants Ciavarella, Corbin, and Fisher. The PRC denied the appeal. Plaintiff appealed twice more, first to Defendant Lawler, the superintendent, and subsequently to Defendant MacIntyre, the Chief Hearing Examiner. All of Plaintiff's appeals were denied. As a result of the finding of guilt, the DOC ordered Plaintiff to reimburse the prison for Nguyen's medical expenses, which were found to total $16,624.28. This order entitled Plaintiff to an assessment hearing, at which Plaintiff was permitted to challenge the amount assessed. Plaintiff was unsuccessful, however, in his challenge and the Secretary of the DOC issued a final adjudication requiring Plaintiff to reimburse the DOC $16,624.28.

Plaintiff's Amended Complaint is comprised of four counts. In Count I, Plaintiff alleges Defendant Mitchell violated Plaintiff's due process rights in his original disciplinary hearing, by wrongfully convicting him of the misconduct charges. In Count II, Plaintiff alleges that Defendants Ciavarella, Corbin, Fisher, Lawler, and MacIntyre violated Plaintiff's due process rights by denying his appeals from his disciplinary conviction. In Count III, Plaintiff alleges that Defendants Eberling and Diffin failed to protect Plaintiff from Nyugen by failing to secure Plaintiff's cell door and make rounds of the prison. In Count IV, Plaintiff alleges a due process claim against Lawler, MacIntyre, Mitchell, and the PRC based on the

alleged admission of hearsay evidence in the form of unauthenticated medical bills during Plaintiff's assessment hearing.  Plaintiff asks that this Court declare the entire misconduct proceedings unconstitutional, order the misconduct expunged from Plaintiff's institutional records and award compensatory and punitive damages.

Defendant has now filed a motion seeking to dismiss all claims in this case. (Doc. 19.)  For the reasons that follow, we will recommend that the Court grant the motion.

## II.   <u>STANDARD OF REVIEW</u>

### A.   <u>Rule 12(b)(6)– The Legal Standard.</u>

The Defendants have moved to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in

4

> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.</u>

<u>Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

<u>Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>,

the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Id.</u> at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 1949.  Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

These heightened pleading standards apply to all aspects of the Court's

threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis

both when assessing the adequacy of the factual assertions set forth in the complaint,

and when examining whether the complaint states one or more valid causes of action

against the named defendants.

We observe further that when "deciding a motion to dismiss, courts generally

consider only the allegations contained in the complaint, exhibits attached to the

complaint and matters of public record." <u>Pension Benefit Guar. Corp. v. White</u>

<u>Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); <u>see also</u>

<u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider

"undisputedly authentic document[s] that a defendant attaches as an exhibit to a

motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."
Pension Benefit, 998 F.2d at 1196. Additionally, "documents whose contents are
alleged in the complaint and whose authenticity no party questions, but which are not
physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate
Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); see also U.S.
Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district
court may not consider matters extraneous to the pleadings, a document integral to
or explicitly relied upon in the complaint may be considered without converting the
motion to dismiss into one for summary judgment.") (internal quotation omitted).
However, the court may not rely on other parts of the record in making its decision.
Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In this case, Plaintiff did not attach documents to his amended complaint.
However, in his brief in opposition to Defendants' motion to dismiss filed on January
24, 2011, Plaintiff appended copies of the Defendant Eberling's misconduct report
filed immediately following the June 14, 2009, violent incident between Plaintiff and
Nguyen (Doc. 27, Ex. A-1); Defendant Mitchell's evidentiary hearing report that was
prepared and issued two days later, on June 16, 2009 (Doc. 27, Ex. A-2); Defendant
Lawler's decision issued on July 23, 2009, rejecting Plaintiff's appeal of misconduct
#B154019 (Doc. 27, Ex. B-1); documents that Plaintiff submitted in support of his

misconduct hearing appeal (Doc. 27, Ex. C-1); the Program Review Committee's written decision and rationale for upholding the disciplinary sanctions imposed against Plaintiff (Doc. 27, Ex. C-2); Plaintiff's appeal of misconduct #B154019 that he directed to the Chief Hearing Officer on July 31, 2009 (Doc. 27, Ex. D-1); and the August 11, 2009, decision of Robert B. MacIntyre, the Chief Hearing Examiner, denying Plaintiff's appeal (Doc. 27, Ex. D-2). Consistent with the legal authority set forth in the preceding paragraph, we find that the Court may properly consider and rely upon these documents, which Plaintiff has submitted and relied upon, and about which he plainly had notice. Plaintiff does not dispute the authenticity of these documents; he simply disagrees with the conclusions reached in them and believes that they are both relevant to, and offer support for, his claims in this case.

There is no risk of unfairness or surprise where a court considers and relies upon indisputably authentic documents attached to a complaint when ruling upon a motion to dismiss, and we can perceive no basis for concluding that a different rule would apply in a case such as this, where the plaintiff did not attach the documents to his complaint, but instead attached them to a brief opposing a motion filed seeking the dismissal of that complaint. We, therefore, have considered the allegations set forth in Plaintiff's complaint, as well as the documentary exhibits he attached to his brief in opposition to Defendants' motion, in our analysis of Defendants' motion.

Upon consideration of the allegations in the pleadings, and the official documents that Plaintiff has filed, we conclude that Plaintiff has failed to allege any cognizable claim for due process violations relating to the misconduct he received, and the denials of his subsequent appeals for relief, stemming from the affray between Plaintiff and Nguyen.   Furthermore, we find that the documents Plaintiff has submitted in support of his claims actually undermine them, and demonstrate that the disciplinary decisions were predicated upon sufficient evidence to sustain them, and appear to have been well-justified in light of the severity of the injuries sustained by Nguyen.   Furthermore, we find that Plaintiff has failed to allege a claim against Defendants Eberling and Diffen for failing to protect him from Nguyen.   We similarly conclude that the belated affidavit that Plaintiff filed, even if accepted as true for purposes of this report, does not save the claim for deliberate indifference because it fails to support the claim in any relevant way.

We explain our analysis and recommendations further below.

## III. <u>DISCUSSION</u>

### A. **Plaintiff Fails to State a Procedural Due Process Claim Against Mitchell.**

At the outset, Defendants argue that the Plaintiff has failed to state a procedural due process claim against Defendant Mitchell because he has failed to allege that he

was denied the minimum due process protections outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).   Plaintiff argues in response that "Defendant Mitchell by misrepresenting facts to justify his arbitrary misconduct sanction(s) deprived Plaintiff [of due process]."  (Doc. 18.)  We find that Plaintiff's claim is without merit, as the prison disciplinary proceedings afforded Plaintiff the full panoply of constitutionally required procedures.

Because Defendants concede that the disciplinary proceedings regarding Plaintiff's misconduct and subsequent assessment hearing are sufficient to trigger due process safeguards, we begin our analysis by explaining those safeguards.   It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff</u>, 418 U.S. at 556.  The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings.  Those protections include the right to: (1) receive advance written notice of the disciplinary charges; (2) to call witnesses and present documentary evidence as part of a defense when consistent with institutional safety or correctional goals; and (3) receive a written statement by a fact finder of the evidence relied on and the reasons for the disciplinary action. <u>Id.</u> at 563-67.

In the Amended Complaint, Plaintiff alleges that "Defendant Mitchell, in conjunction with the above misrepresentation of facts, by findings for the unsworn Misconduct Report over the sworn denial of Plaintiff and without giving a sufficient reasoning for his findings, denied Plaintiff his right to a written statement of the decisions and reasonings, based upon the preponderance of the evidence, to support his findings, in violation of the Fourteenth Amendment to the United States Constitution." (Doc. 18.) Such an allegation, if true, would not comport with the third procedural protection under Wolff. However, we find this allegation to have no basis in light of the materials that Plaintiff himself submitted in this case. The fact that the Plaintiff included a copy of Defendant Mitchell's Disciplinary Hearing Report, the report he claims not to have received, belies his claim.

We also find Plaintiff's allegation that he did not receive written statement by a factfinder to be unfounded, because the evidence is clear that Plaintiff knew the reasons for the finding of guilt and the evidence prison officials relied upon in reaching that conclusion. First, the claim is at odds with paragraph 19 in Plaintiff's original complaint in which he states, "Defendant Mitchell failed to review the requested videotapes, *stating in his typed report* that the Plaintiff's cell door was

opened." (Doc. 1).  Second, Plaintiff's statements[3] in DOC documents that he filed in opposition to Defendants' motion show that he knew the basis for Defendant Mitchell's decision.  (Doc. 27-1).  Finally, the typed Disciplinary Hearing Report by Defendant Mitchell (Doc. 27, Ex. A-2), clearly indicates the evidence relied on and the reasons for the disciplinary action taken. Also indicated in the report is the fact that "[t]he inmate has heard the decision and has been told the reason for it and what will happen" and also that "the circumstances of the charge have been read and fully explained to the inmate." (Id.)

Wolff instructs that the purpose of providing an inmate with the factfinder's written statement is two-fold: (1) to protect the inmate against collateral consequences based on a misunderstanding of the original proceeding and (2) to insure that administrators, "where fundamental constitutional rights may have been abridged," will act fairly.  Wolff, 418 U.S. at 565.  "Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others."  Id.  Mindful of this guidance, we find that Plaintiff has failed

---

[3] Plaintiff has submitted a copy of the appeal he took of the initial disciplinary decision.  (Doc. 27, Ex. C-1.)  Within the appeal, Plaintiff makes several statements that imply he knew  the evidence relied on and the reasons for the disciplinary action.  Such statements include: "[t]he Hearing Examiner acted in bad faith were *in his rational* [sic] he misrepresented the facts" and "Mr. Mitchell even says *in his rational* [sic]."

to state a claim based upon an alleged failure to be provided a written statement by a fact finder of the evidence relied on and the reasons for the disciplinary action. In actuality, the fact finder provided a written report and Plaintiff used the report in "propounding" his defense. Documents Plaintiff himself submitted demonstrate this to be true, and fatally undermine Plaintiff's allegations to the contrary.

Reading Plaintiff's Amended Complaint favorably, we believe that Plaintiff's procedural due process claims also include an allegation that Defendant Mitchell was biased in his findings.[4] (Doc. 18.) We note that Due Process requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Id. at 306. In the past, inmates have asked courts to set aside disciplinary hearing results because of general staff bias. Such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a Due

---

[4]Plaintiff claims that "Defendant Mitchell has a history of being biased towards inmates–he almost always find [sic] for the unsworn Misconduct Report over the sworn denial of the inmate – and was bias [sic] in this case." (Doc. 18.)

Process violation.  Lasko v. Holt, 334 F.App'x 474 (3d Cir. 2009).  Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias.  See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the case at bar, Plaintiff does nothing more than offer a generalized critique of Defendant Mitchell's alleged impartiality.  Plaintiff does not allege any facts that tend to show that Defendant Mitchell had a role "in the circumstances underlying the charge from sitting on the disciplinary committee" in anyway whatsoever.  Thus, we conclude that Plaintiff has failed to state a procedural due process claim under a theory of staff bias.

### B.    Plaintiff Fails to State a Substantive Due Process Claim Against Defendants Mitchell, Lawler, MacIntyre, and the Program Review Committee.

### 1.    Substantive Standards Governing Misconduct Hearings

Like his procedural due process challenge, Plaintiff's substantive attack on the sufficiency of the evidence in his disciplinary hearing must meet a demanding legal standard in order to succeed.  A prison disciplinary determination comports with due process if it is based on "some evidence."  See Superintendent, Mass. Corr. Inst. v.

15

<u>Hill</u>, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See <u>id.</u> at 455; <u>Thompson v. Owens</u>, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well-settled that the decision of a hearing examiner is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. <u>Hill</u>, 472 U.S. at 457; <u>Elkin v. Fauver</u>, 969 F.2d 48 (3d Cir. 1992); <u>Thompson v. Owens</u>, 889 F.2d 500 (3d Cir. 1989); <u>Franco v. Kelly</u>, 854 F.2d 584, 488 (2d Cir. 1988); <u>Freeman v. Rideout</u>, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." <u>Freeman</u>, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is highly deferential standard of review and "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Hill</u>, 472 U.S. at 445-56. Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the Hearing Officer, the court must reject the evidentiary challenge by the

petitioner.  Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d

501; Freeman, 826 F.2d at 954.   In practice, courts have rarely condemned

correctional disciplinary decisions as being wholly lacking in evidentiary support and

have frequently concluded that disciplinary findings are supported by the requisite

degree of proof.   See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)

(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir.

2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006) (same); Levi

v. Holt, 193 F. App'x 172 (3d Cir. 2006) (same); Sinde v. Gerlinski, 252 F. Supp. 2d

144 (M.D. Pa. 2003) (same).

> **2.    Defendant Mitchell's Finding of Misconduct at the Initial
>         Misconduct Hearing  is Supported by Adequate Evidence.**

Plaintiff first attacks the substance of Defendant Mitchell's decision.  Ignoring

his own admission that he severely injured Nguyen during their physical altercation,

Plaintiff argues that there was insufficient evidence to support a finding of

misconduct on his part. (Doc. 18.)   Defendants argue in response that "the facts

Plaintiff pleads show that Mitchell's decision was supported by 'some evidence.'"

(Doc. 20.)  We agree with the Defendants and find that Plaintiff cannot successfully

challenge the substantive outcome of the misconduct hearing, because his own

allegations and documents he submitted in this case show that there is "some evidence" in the record to support Defendant Mitchell's decision.

Upon initial inspection, we find it most telling that Plaintiff admits his actions "lead [sic] to Inmate Nguyen being severely injured." (Doc. 18.) Moreover, it is apparent from the record that shortly after the altercation, Nguyen found himself in an "outside hospital clinging to life." (Doc. 27, Ex. A-2.) Plaintiff's admission, coupled with the extent of Nguyen's injuries, is certainly "some evidence" in the record that could support the conclusion reached by the disciplinary board. The evidence does not stop there though; Defendant Mitchell's decision is also supported by security video footage of the incident. Defendant Mitchell's Disciplinary Hearing Report states that he viewed security video footage of the incident. (Id.) Moreover, while the same report notes that the video image of Plaintiff's cell was obstructed, the report and decisions on appeal that Plaintiff has submitted contain sufficient evidence that would support the conclusion reached that plaintiff caused Inmate Nguyen's injuries. Defendant Mitchell indicated in his report that the video clearly shows Nguyen enter the cell that Plaintiff occupied unharmed, but moments later Nguyen is seen exiting "severely beaten." (Doc. 27, Ex. A-1.) In the interim between entry and exit, Defendant Mitchell notes that video shows "sneakers shoving off the floor...indicating fighting." (Doc. 27, Ex. A-2.) While Plaintiff would have us do so,

18

we need not examine the entire record, assess the credibility of C/O Eberling's statement, or even weigh the evidence.  See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Plaintiff admitted that he was the person who caused Nguyen's injuries, and thus his contention that there was  insufficient evidence to support a finding against him his simply without any merit.

       We are compelled to address Plaintiff's allegations that he merely acted in self-defense.  Plaintiff argues that his admittedly severe beating of Nguyen was in self-defense because Nguyen allegedly opened Plaintiff's cell door at the start of the altercation. Even assuming that Plaintiff has a right to self-defense in this instance, the issue is not whether Plaintiff was defending himself.  Rather, the issue is whether Defendant Mitchell believed that Plaintiff was defending himself; his written findings reveal that he did not. While the status of the cell door may be in dispute, it is immaterial to our analysis.   Defendant Mitchell found that Plaintiff's conduct exceeded merely fending off Nguyen's alleged attack; he became the aggressor, inflicting injuries upon Nguyen that led to $16,624.28 worth of medical expenses. As discussed above, Defendant Mitchell's decision, including the finding in his report that Plaintiff was not acting in self-defense, is supported by "some evidence."  Thus,

Defendant Mitchell's finding of misconduct comports with due process, notwithstanding Plaintiff's allegations to the contrary.

    **3.**    **The Decisions of Lawler, MacIntyre, and the Program Review Committee Sustaining the Initial Finding of Misconduct are Supported by Adequate Evidence.**

Defendants Lawler and MacIntyre as well as the Program Review Committee ("PRC") (consisting of Ciavarella, Corbin, and Fisher), contend that Plaintiff has failed to state a claim because "Plaintiff has no federal constitutional right to administrative review his disciplinary proceedings" and thus, a failure to properly review such disciplinary proceedings is not a cognizable claim under the Due Process Clause. (Doc. 20.) Plaintiff argues that the Defendants "effectively denied Plaintiff his right to appeal" by "arbitrarily sustaining" Defendant Mitchell's initial finding. (Doc. 18.) We find that Plaintiff has failed to allege a due process claim, although we reach this conclusion on different grounds than those argued by Defendants.

At the outset, we reiterate that a prison disciplinary decision comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985). Moreover, the decision of a hearing examiner is entitled to considerable deference and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly,

854 F.2d 584, 488 (2d Cir. 1988); <u>Freeman v. Rideout</u>, 808 F.2d 949, 955 (2d Cir. 1986).

The relevant question here is whether there was evidence in the record that could support the conclusions reached by the PRC and Defendants Lawler and MacIntyre to sustain Plaintiff's misconduct. After examining the disciplinary report and related documents that Plaintiff submitted, and upon which he relies, we find that sufficient evidence exists to support the disciplinary decisions in this case. As discussed above, we find that Defendant Mitchell's initial determination is supported by "some evidence" in the record. Moreover, we based this finding upon the same evidence that was available to the PRC and Defendants Lawler and MacIntyre. In their review of Plaintiff's misconduct appeal, the Defendants had Mitchell's Hearing Report (Doc. 27, A-2) and Plaintiff's Misconduct Hearing Appeal Form (Doc. 27, Ex. C-1). Provided within these materials are accounts which clearly state that Nguyen entered Plaintiff's cell seemingly unharmed and shortly thereafter found himself in an "outside hospital clinging to life." (Doc. 27, Ex. A-2.) The obvious deduction that Plaintiff caused the harm meets the minimal, "some evidence" standard required here. However, going one step further, Plaintiff's Misconduct Hearing Appeal (Doc. 27, Ex. C-1), which was available to the Defendants on each appeal, contains Plaintiff's

admission that he caused Inmate Nguyen's extensive injuries.  Thus, we find that the evidence available to the Defendants on appeal amounts to "some evidence."

We also consider whether the Defendants relied on the available evidence in sustaining Mitchell's decision.  We find that the report and other documents that Plaintiff has submitted indicate that the Defendants relied on all relevant evidence available to them in deciding Plaintiff's appeals.  Initially, the PRC's Action states, "the presented information provides enough evidence to justify the imposed sanction." (Doc. 27, Ex. C-2.)  Furthermore, Defendants Lawler and MacIntyre each viewed the video of the altercation for themselves, finding that Mitchell's decision was supported by sufficient evidence.  Specifically, Defendant Lawler's letter to Plaintiff states: "[T]he evidence is sufficient to support the charges of assault and lying to an employee.  You clearly assaulted inmate Nguyen, and as a result, he had to be life-flighted from the local hospital because of the seriousness of his injuries." (Doc. 27, Ex. B-1.)  Additionally, Defendant MacIntyre's letter to Plaintiff states, "the findings made by the Examiner are amply supported by evidence presented at your hearing." (Doc. 27, Ex. D-2.)  Considering the record each Defendant had at the time of their respective appellate decisions and the substance of the evidence available therein, we find that the Defendants had "some evidence" to support their conclusions

22

at each stage of Plaintiff's prison appeals process. Thus, the Defendants' disciplinary determinations and denial of Plaintiff's appeals comport with due process.

> **4.    The Program Review Committee's Decision Not to View the Videotape Comports with Due Process.**

Plaintiff also contends that his due process rights were violated when the PRC chose not to view the security video of the incident, relying instead on Defendant Mitchell's description of the video found in his Disciplinary Hearing Report. Defendants respond, again, that Plaintiff has no federal constitutional right to administrative review his disciplinary proceedings and thus, has failed to state a claim under the Due Process Clause. We find that the decision of the PRC to sustain Mitchell's decision and not to view the video evidence comports with due process because disciplinary officials are entitled to rely upon staff members' descriptions of video evidence in lieu of viewing the video themselves.

In the prison setting, inmates will often ask disciplinary officials to review potentially exculpatory video evidence. We note that exculpatory evidence is defined as "evidence favorable to an accused . . . where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the [government]." United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984)(quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). Regarding video evidence in the prison setting,

cases have defined some minimal due process requirements which must be met. First, in the absence of a timely request by an inmate for the presentation of such evidence, there is no general affirmative obligation on the part of prison officials to ferret out this proof.  See, e.g., Piggie v. Cotton, 342 F.3d 660 (7th Cir. 2003).  Second, the requirements of procedural due process are met if, following an inmate request, prison officials examine existing video evidence *in camera* to make their determination regarding whether a prisoner committed a misconduct.  See, e.g., Scruggs v. Jordan, 485 F.3d 934 (7th Cir. 2007); Herrera v. Davis, 54 F. App'x 861 (7th Cir. 2002).  Third, a hearing officer may also rely upon an accurate description of video evidence provided by another staff member. See Jones v. Sherrod, No. 07-673, 2010 WL 3880409 (S.D. Ill. Sept. 28, 2010).  Finally, disciplinary officials may also refuse to consider such evidence entirely, despite an inmate's request, provided that they give, at some time, an adequate explanation of the reasons for refusing to consider the evidence.  See, e.g., Ponte v. Real, 471 U.S. 491, 497 (1985).  However, in this setting prison disciplinary officials:

> "[M]ay not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." Whitford v. Boglino, 63 F.3d 527, 536 (7th Cir. 1995) (quoting Viens v. Daniels, 871 F.2d 1328, 1336 n.2 (7th Cir. 1989)). . . . [Therefore, while the prison] need not explain at the hearing why it denied an inmate's request for witnesses or potentially exculpatory evidence, the [prison] has the

burden of proving [at some time] that its denial was not arbitrary or capricious. See Ponte v. Real, 471 U.S. 491, 498-99 (1985).

Piggie v. McBride, 277 F.3d 922, 925 (7th Cir. 2002). Thus, upon Plaintiff's request, disciplinary officials may either view exculpatory video evidence *in camera* or rely on a staff member's accurate description of the video. And, while disciplinary officials may not arbitrarily refuse to consider exculpatory evidence, they need not offer an explanation for the refusal at the time of trial.

Guided by these considerations, we briefly consider Plaintiff's allegation that the PRC's failure to view the video evidence deprived Plaintiff of his due process rights. Even if we assume Plaintiff was entitled to certain minimal due process requirements because the video evidence in this case was potentially exculpatory, Plaintiff's claims still fail. We recognize that Plaintiff is concerned with the conflicted findings regarding the status of his cell door, as seen in the security video. Moreover, we recognize that it was because of the potential for error that Plaintiff asked the PRC to review the video evidence. Indeed, Defendant Lawler subsequently found that Defendant Mitchell had been "mistaken about [Plaintiff's] cell door being open." (Doc. 27, Ex. B-1.)

However, such a determination did not result in the deprivation of Plaintiff's due process rights. Based on the foregoing principles, the PRC was entitled to rely

25

on Defendant Mitchell's description of the contents of the video evidence.  The PRC summarized in its decision Defendant Mitchell's findings regarding the video and explained that there was enough evidence in Mitchell's report to justify Plaintiff's sanction.  (Doc. 27, Ex. C-2.)  The PRC, in reviewing Plaintiff's appeal, relied on a fellow staff member's account of the video evidence and considered other evidence in the record.  The PRC found that evidence available during the appeal "provide[d] enough evidence to justify the imposed sanction."  (Id.) Thus, because disciplinary officials are entitled to rely upon staff members' descriptions of video evidence, the decision of the PRC to sustain Mitchell's decision and not to view the video evidence does not amount to a violation of due process.

**C.   Plaintiff Fails to State a Due Process Claim for Deprivation of a Liberty Interest Against Defendants Lawler, MacIntyre, Mitchell and the PRC Because the Assessment of Medical Expenses from Plaintiff's Inmate Account is Supported by Adequate Evidence.**

Plaintiff also argues that the medical expenses assessed against him violated due process because the hearing officer at Plaintiff's assessment hearing relied on unauthenticated, redacted versions of the hospital bills and testimony from a prison business office representative regarding those bills.  Defendants contend that Plaintiff was afforded a fair opportunity to challenge the assessment and was not denied due

process.  We find that the assessment of medical expenses was supported by "some evidence," and thus, Plaintiff has failed to allege a due process violation.

As a threshold matter, we are cognizant that the Third Circuit has held that an inmate's interest in his prison account constitutes a property interest that is entitled to some measure of due process protection before it can be seized, assessed, or otherwise impaired.  See Burns v. Pa. Dep't of Corr., 544 F.3d 279, 291 (3d Cir. 2008).  In order to show a violation of the right to be protected by due process, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property; and (2) that the deprivation occurred without due process of law. Id. at 285; see also Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997) ("Thus, inmates are entitled to due process with respect to any deprivation of money."). There is thus no question that Carter has properly alleged the first prong of this due process analysis, and the only question presented is whether his prison account was assessed without adequate procedural safeguards.  See McKeithan v. Beard, 322 F. App'x 194, 198 (3d Cir. April 16, 2009).

Regarding this secondary question, the Third Circuit has explained that determining what process is "due" in the prison disciplinary context is subject to some degree of flexibility:

> The amount of process an inmate is "due" is a distinct inquiry, and we agree that it must be informed by the Supreme Court's instruction in <u>Sandin</u> to "afford appropriate deference and flexibility to state officials trying to manage a volatile environment" and limit "the involvement of federal courts in the day-to-day management of prisons." <u>Sandin</u>, 515 U.S at 482, 115 S.Ct. 2293. As the Supreme Court instructed in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), "(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." <u>Id.</u> at 560, 94 S.Ct. 2963 (quotation omitted). As such, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." <u>Id.</u>

<u>Burns</u>, 544 F.3d at 290 n.8, 544 F.3d at 290 n.8; <u>see also</u> <u>Hale v. Beard</u>, 168 F. App'x 532, 534 (3d Cir. 2006) ("Traditionally, in assessing a procedural due process claim, we will balance the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation of property.") (citing <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 421 (3d Cir. 2000)); <u>Reynolds</u>, 128 F.3d at 179 ("The procedural protections required by the Due Process Clause are determined with reference to the particular rights and interests at stake in a case.").

Mindful of the Third Circuit's guidance regarding the flexible nature of this determination in the prison discipline context, we reiterate the central teaching of Wolff that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Instead, where a prison disciplinary hearing may result in the deprivation of a protected interest, an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454 (1985).  Additionally, a disciplinary decision implicating a prisoner's liberty interest must be supported by at least "some evidence." Id. at 455.

Expounding on the "some evidence" standard, the Supreme Court in Wolff discussed the applicability of certain evidentiary procedures–including witnesses, documentary evidence, and confrontation–to prison disciplinary proceedings stating that fully affording these procedural rights to prisoners would create "potential for havoc inside the prison walls." Wolff, 418 U.S. at 567.   The Wolff court further noted that:

> Prison officials must have the necessary discretion to keep the hearing
> within reasonable limits and to refuse to call witnesses that may create
> a risk of reprisal or undermine authority, as well as to limit access to
> other inmates to collect statements or to compile other documentary
> evidence. . . . These procedures are essential in criminal trials where the
> accused, if found guilty, may be subjected to the most serious
> deprivations, or where a person may lose his job in society. But they are
> not rights universally applicable to all hearings. Rules of procedure may
> be shaped by consideration of the risks of error and should also be
> shaped by the consequences which will follow their adoption.

Wolff, 418 U.S. at 567-68 (internal citations omitted). The Third Circuit, relying on

Wolff, ruled that a hearing examiner in a prison disciplinary proceeding may rely

upon hearsay evidence in finding that a violation is supported by "some evidence."

Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992). In Griffin, a prisoner was found

guilty at his misconduct hearing of possession and consumption of intoxicating

beverages but he challenged the lack of physical evidence supporting the finding.[5]

The court held that the prisoner's due process rights were not violated when the

hearing officer based his decision regarding the nature of the beverages exclusively

on a correction officer's testimony that the beverages were fermented instead of

testing of the actual beverages themselves. The court further noted that "there can be

no question that it is constitutional to rely on such testimony as the basis for a

---

[5]The inmate contended that the actual fermented beverages themselves
should have been introduced at the misconduct hearing.

30

decision in a prison disciplinary proceeding, where hearsay is allowed and a violation must simply be supported by 'some evidence.'" Id. (internal citations omitted).

Judged against the foregoing standards, Plaintiff's claim must fail. The law is clear that Plaintiff is not entitled to the full panoply of rights due a criminal defendant. In the instant case, we find Plaintiff has raised two evidentiary issues regarding the assessment of medical expenses from his inmate account: authentication and hearsay.

First, Plaintiff argues that his due process rights were violated because the hospital and physician bills were not authenticated. We are mindful of the principle that the "[r]ules of procedure may be shaped by consideration of the risks of error and should also be shaped by the consequences which will follow their adoption." Wolff, 418 U.S. at 567-68. In a prison setting, such an authentication requirement would place a large burden on prison officials but add little value to the hearing examiner's determination. Moreover, we note that prison officials have discretion to keep disciplinary hearings "within reasonable limits" where the risks of error are minimal. Here, there is no suggestion that the hospital submitted fraudulent medical bills to the prison. Thus, we find that Defendants, after consideration of the risk of error and the consequences of adoption, were entitled to rely upon the unauthenticated medical

bills. Therefore, Plaintiff's due process claim regarding the assessment of medical

damages on his inmate account fails in respect to his authentication argument.

Second, Plaintiff argues that the testimony of the business office representative

is unreliable hearsay, and thus, the assessment of medical damages against him is

unconstitutional. This argument also fails. As noted above the Third Circuit has held

that a hearing officer may rely upon hearsay evidence in finding that a violation is

supported by "some evidence." Here, the business office representative has personal

knowledge of the medical bills as well as the treatment that Nguyen received. Such

testimony bears sufficient indicia of reliability and the law permitted prison officials

to rely upon such evidence during the disciplinary proceedings at issue. <u>Griffin</u>, 969

F.2d at 22; <u>cf.</u> <u>Cannon v. Schultz</u>, No. 08-4514, 2010 U.S. Dist. LEXIS 59468, at *26

n.5 (D.N.J. June 16, 2010) ("Hearsay is admissible in a disciplinary proceeding.").

Moreover, the availability of redacted versions of the medical bills, which could be

used for corroboration, further supports the apparent reliability of the testimony.

"Accordingly, there can be no question that it is constitutional to rely on such

testimony as the basis for a decision in a prison disciplinary proceeding, where

hearsay is allowed and a violation must simply be supported by 'some evidence.'"

<u>Griffin</u>, 969 F.2d at 22. Therefore, Plaintiff's due process claim regarding the

assessment of medical damages on his inmate account fails with respect to his hearsay

argument.   Thus, Plaintiff fails to state a claim for due process violations resulting from the admission of medical bills in his subsequent assessment hearing.

### D.   Plaintiff Fails to State an Eighth Amendment Failure to Protect Claim Against Correctional Officers Diffen and Eberling.

At the outset, Plaintiff attempts to set forth a failure-to-protect claim against Correctional Officers Diffen and Eberling because he believes that the alleged attack should have been prevented, thereby obviating Plaintiff's need to defend himself. Specifically Plaintiff alleges that the Defendants "failed to take reasonable measures to ensure Plaintiff's safety from attack" by failing to secure doors and make rounds.[6] (Doc. 18.)  Defendants argue in response that Plaintiff's failure to protect claim fails because Plaintiff "has not alleged that Correction Officers Herberling [sic] and Diffen were deliberately indifferent to an excessive risk to inmate safety."  (Doc. 20.) Accordingly, the Defendants request that the Court grant their motion to dismiss Plaintiff's Eighth Amendment claims.

---

[6] Defendant Mitchell's Disciplinary Hearing Report states, "[t]he Examiner notes upon returning to or departing from a cell the inmate is required to close and secure his door."  (Doc. 27, Ex. A-2.)  Such a regulation would seem to defeat Plaintiff's claim because under such, it is the inmate's responsibility to secure his cell door.  However, we do not address this argument because neither party provided the prison policy that supports Defendant Mitchell's statement, and because it is unnecessary to our consideration of the motion before the Court.

The Eighth Amendment to the United States Constitution provides that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." With respect to the Eighth Amendment, the Supreme Court has explained that:

> The Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (citations omitted). The Third Circuit specifically addressed deliberate indifference in a prison conditions context in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001). In that case, the court explained the basic requirements of a failure to protect claim, noting that "[a]n Eighth Amendment claim against a prison official must meet two requirements: (1) 'the deprivation alleged must be, objectively, sufficiently serious;' and (2) the 'prison official must have a sufficiently culpable state of mind.'" Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Moreover, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to

inmate health or safety." Id. The "deliberate indifference" level of culpability requires that a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. As discussed more fully below, the knowledge element is a subjective one, insisting upon actual knowledge on the part of the prison official.

In clarifying the meaning of "deliberate indifference," the Third Circuit noted that the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Beers-Capitol, 256 F.3d at 131. More specifically, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. The court made clear that "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id. at 133. This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates.  The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842.  The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id.  Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005), the Third Circuit did interpret Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison

36

official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety.  See Farmer, 511 U.S. at 842-43.

Judged against the foregoing standards, Plaintiff's failure to protect claim against C/Os Diffen and Eberling fails.  Plaintiff has failed to allege that Diffen or Eberling knew of and disregarded an excessive risk to his safety at SCI-Huntingdon. In paragraph 34 of his Amended Complaint,  Plaintiff claims that the "conditions of incarceration posed a substantial risk of harm to the Plaintiff of which the Defendant [sic] were aware through security and basic training as well as DOC policy and to which defendants acted indifferently."  Plaintiff's generalized allegations fail to meet the demanding standards delineated in Farmer and substantiated in Beers-Capitol. Plaintiff has not alleged that the Corrections Officers had any prior warning or knowledge that there was going to be an altercation between Nyugen and Plaintiff. Morever, Plaintiff does not allege that he made the officers aware that his cell door was unlocked or that he was in any danger.  We find Plaintiff to misinterpret the "deliberate indifference" standard, which is clear from his allegation in the Amended Complaint that "Carter's cell attack was foreseeable and a direct consequence." (Doc. 18.) Plaintiff's entire argument is stilted towards what he believes Defendants should have known, not what they actually knew.  Even reading Plaintiff's allegations

liberally, it is not sufficient that the Corrections Officers should have been aware of the risk of the alleged attack.[7]

Additionally, Plaintiff's claims fail under an "obvious risk" analysis. Nothing in the complaint or in the evidence submitted suggests that the risk that Plaintiff faced at SCI-Huntingdon was so obvious at any time during his incarceration at the facility that knowledge of the alleged dangers could be inferred or imputed to either of these

---

[7] We pause to acknowledge that on February 23, 2011, Plaintiff submitted an affidavit from an inmate, apparently in support of his claims of deliberate indifference against Defendants Eberling and Diffen. The author of this affidavit, whose name is not legible on the affidavit, but which appears to be James E. Brown, an inmate at SCI-Albion, attests that on June 14, 2009, prior to the fight between Nguyen and Plaintiff, he witnessed Nguyen initiate and engage in a fight with another inmate. (Doc. 30, at 1.) The affidavit includes other representations that the affiant heard Nguyen make statements after the fight that the affiant interpreted to be a threat against Plaintiff. (Id.) The affiant states that after the fight broke up, Defendant Eberling arrived on the scene and asked an unknown person over his radio, "[t]here is Nguyen and who did he beat up this time[?]" (Id.) The affiant also attests that it is "common knowledge in the prison amongst prisoners and staff that Inmate Nguyen is feared because he know [sic] martial arts and will hurt you and the prison officials know this also." (Id.) However, even if we accept this affidavit as true for purposes of considering the pending motion to dismiss, it offers no support for Plaintiff's claims. Other than making a sweeping, and generalized allegation that prison staff and inmates considered Nguyen to be a dangerous inmate, there is nothing in the affidavit to suggest that Defendant Eberling had any knowledge, or reason to know, that Nguyen intended to attack Plaintiff. The affidavit says nothing at all regarding Defendant Diffen. Thus, setting aside the fact that Plaintiff has not even made allegations that these Defendants knew of and ignored an excessive risk to his health or safety, the affidavit itself does not provide any indication that either of these corrections officers had a reason to believe that Nguyen presented a threat to Plaintiff, or that they knew of, or should have been aware of, a conflict between these two inmates.

defendants.  We note that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Moreover, while the Third Circuit did interpret Farmer to signal that a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation, Plaintiff has failed to make this allegation.[8]  Ultimately, Plaintiff's claims are insufficient to impose liability against the Defendants under the controlling standards of Farmer or Beers-Capitol, supra.  Therefore, we find that Plaintiff has failed to state an Eighth Amendment failure to protect claim against Defendants Diffen and Eberling.

## IV.   RECOMMENDATION

Upon due consideration, and for the reasons set forth above, IT IS HEREBY RECOMMENDED THAT

1.   Plaintiff's proposed second amended complaint (Doc. 29) be STRICKEN.

---

[8] As we noted above, although Plaintiff submitted a belated affidavit from an inmate who claims that prison officials and inmates considered Nguyen to be a dangerous inmate, Plaintiff never made such an allegation in his amended complaint, and the affidavit's generalized comment that Nguyen was considered dangerous is not sufficient to save Plaintiff's claim.

2.      Defendants' Motion to Dismiss Plaintiff's amended complaint (Doc. 19)

        be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: April 4, 2011.

40